SKELE, APPELLEE, *v.* MUTUAL BENEFIT LIFE INSURANCE COMPANY, APPELLANT, ET AL.

(No. 83-CA-57 — Decided September 7, 1984.)

*Sunderland & Moore* and *Stephen E. Klein,* for appellee.

*Pickrel, Schaeffer & Ebeling* and *Paul J. Winterhalter,* for appellant.

BROGAN, P.J. Appellee, Irma Skele, filed a complaint in the Miami County Probate Court on November 16, 1982 praying that the court find Peters Skele presumed dead pursuant to R.C. 2121.01(A)(2). Following a May 4, 1983 hearing, the trial court decreed Peters Skele presumed dead. From the judgment, defendant-appellant, Mutual Benefit Life Insurance Company, has appealed to this court.

As its sole assignment of error, appellant maintains that the trial court erred to its prejudice by finding that Peters Skele is presumed dead.

In pertinent part, R.C. 2121.01 provides:

"(A) Except as provided in division (B) of this section, a presumption of the death of a person arises:

"* * *

"(2) When the person has disappeared and been continuously absent from his place of last domicile without being heard from and was at the beginning of his absence exposed to a specific peril of death, even though the absence has continued for less than a five-year period."

The evidence indicates that Peters Skele went to Katmai National Park Preserve in the middle of July 1982 to backpack. It was Skele's second visit to Katmai, as he had also gone in the summer of 1980.

Katmai is three hundred air miles southwest of Anchorage, with the town of King Salmon some ten miles west of the 4.3 million-acre park boundary. To gain access to the park, one must fly commercially from Anchorage to King Salmon, and then take a special line or charter to Brooks Camp in the interior of the park. Inside the preserve, there is one dirt road twenty-three miles in length, from Brooks Camp to the Valley of Ten Thousand Smokes. In that twenty-three-mile stretch of dirt road are three streams which may or may not be fordable depending on the weather.

Loren Casebeer, chief ranger and park pilot for Katmai National Park Preserve, testified that there are four main hazards in the park: wildlife, topography, weather and accidents. As regards the wildlife, the park has the world's largest unhunted population of Alaskan Brown Bears. The park also contains moose, wolves, wolverines and lynxes. In addition, the area has dangerous river crossings, rock slides, and unstable terrain features. Finally, the weather can be abysmal at the park, the vast expanse of the wilderness capable of making a minor accident into a major one.

The record reflects that Peters Skele was issued a backcountry use permit on July 23, 1982 setting forth an itinerary whereby Skele was to backpack alone, on foot, from July 24 to August 5 in the preserve. The trip was to start at the Valley of Ten Thousand Smokes and end there. On July 30, two geologists from the United States Geological Survey saw Skele in the evening at Baked Mountain cabin, and reported that Skele had a "massive" backpack.

After Peters Skele did not return from the valley tour on August 5, Casebeer was not overly concerned. However, by August 7, 1982 when there was still no sign of Skele, a formal search was begun. On August 8, an aerial search of Skele's route as listed on the backcountry permit was conducted, and although the weather was good, there was no evidence of him. Michael Maloney, a captain in the United States Army, discovered a backpack half submerged in the sand in or adjacent to the Ukak River on August 8. The backpack contained water, a lot of dirt and ash and a smashed Svea brand backpack stove. The backpack itself, however, was structurally sound. The backpack also contained the Skele use permit.

A foot search was commenced August 9 for Skele, with two rangers going upstream and two rangers going downstream from where the backpack was found in the Ukak River. Grappling was also conducted. However, Skele was not found. Two ranger teams also searched on August 10. On August 24, two rangers located two nylon sacks four miles downstream from where the pack was discovered. One sack contained trash, while the other sack contained seven freeze-dried dinners.

Casebeer indicated that Skele has not been found, although whenever he goes over the area of the Ukak River, he conducts an aerial search. Casebeer noted that when it rains in the area, the surface water drains very quickly, and

the rivers are transformed into raging torrents. Casebeer also related that the Ukak River is a savage river, and that if one falls in the river, the dangers are life-threatening due to the rapids, water temperature of forty to forty-two degrees, and any equipment one might be carrying. In fact, the ranger stated that if someone accidently fell in the river, he would have no chance of surviving.

Appellant maintains that the circumstances surrounding Skele's disappearance point to no peril of a definite, particular or precise nature. In appellant's view, the finding of the trial court was based on speculation, such speculation being beyond the bounds of reasonable inference when there are other equally plausible explanations of Skele's disappearance.

Death may be presumed where the person has disappeared and been continuously absent from his place of last domicile without being heard from and was at the beginning of his absence exposed to a specific peril of death. A "specific peril" means "* * * not the ordinary perils of travel or of navigation but some unusual and extraordinary danger." (Footnote omitted). 1 Jones on Evidence (6 Ed. Gard Rev. 1972) 313, 314, Section 3:88. Justice Harlan added in *Davie* v. *Briggs* (1878), 97 U.S. 628, 634, that "* * * [i]f it appears in evidence that the absent person * * * encountered some specific peril, or within that period came within the range of some impending or immediate danger, which might reasonably be expected to destroy life, the court or jury may infer that life ceased * * *."

The evidence in this case supports a finding that Peters Skele is dead, as Skele alone and in a vast wilderness with a "massive" backpack, encountered a specific peril, the Ukak River, located in the wilds of the Katmai Preserve with its weather conditions and wildlife. Peters Skele came within the range of impending danger that might reason-ably be expected to destroy life. Reasonable inferences which may be drawn from proven facts and circumstances — the discovery of the backpack in the Ukak River and the nature of the river, with its location — are more than sufficient to establish that Peters Skele encountered a specific peril of death.

Because the judgment is supported by some competent, credible evidence going to all the essential elements of the case, the assignment of error is overruled.

The judgment is affirmed.

*Judgment affirmed.*

WILSON and WEBER, JJ., concur.